NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| YUE YU, <br><br> Plaintiff, <br><br> v. <br><br> ANITA GILMORE, et al., <br><br> Defendants. | No. 23cv2003 (EP) (MAH) <br><br> **OPINION** |

**PADIN**, **District Judge.**

Pro se Plaintiff Yue Yu lives in single-family residential area of Kearny, New Jersey, next to Defendant Anita Gilmore. Gilmore is a veteran's surviving spouse, which entitles her to claim a property tax exemption (the "Veterans' Exemption"). The problem, in Plaintiff's telling, is that Kearny also lets Gilmore operate a seasonal tax preparation business from her home, permitting Gilmore to claim *both* the Veterans' Exemption *and* deductions for expenses related to the use of her home as a business. Thus, Plaintiff alleges: (1) civil rights violations against the New Jersey legislature and the Director of the New Jersey Division of Taxation (the "State Defendants"); (2) civil rights violations against the Town of Kearny ("Kearny"), Kearny tax assessor John Peneda, and Kearny "zoning official" Anthony Chisari (collectively the "Kearny Defendants"); and (3) fraud and tax evasion against Gilmore. *See* D.E. 1 ("Complaint" or "Compl.").

The Kearny Defendants move, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim. D.E. 9 ("Kearny Mot."). The State Defendants move on the same grounds. D.E. 11 ("State Mot.").

The motions will be **GRANTED**. The state and local tax-related claims against all parties cannot be adjudicated in federal court, and have already been adjudicated in state Tax Court; thus,

they will be **DISMISSED with prejudice**.[1]  The zoning enforcement claims are not precluded, but are inadequately pled; thus, they will be **DISMISSED without prejudice**.[2]

I.   BACKGROUND[3]

   A.   This Action

Plaintiff lives next to Gilmore.  Compl. ¶ 15.  Gilmore has not paid property taxes for decades due to the Veterans' Exemption.  *Id.* ¶ 16.  Plaintiff challenges Gilmore's use of her home to operate a tax preparation business employing eight people during tax season.  ¶¶ 17-19.

Kearny has been aware of Gilmore's business but "failed to enforce [its] zoning ordinance."[4]  *Id.* ¶ 25.  Kearny's enforcement has, according to Plaintiff, been selective.  For example, a different Kearny business owner was threatened with a $1,000 fine for a banner announcing her granddaughter's birth.  *Id.* ¶ 26.  Likewise, Plaintiff was threatened with a fine for failing to remove a tree in front of her property.  *Id.* ¶ 27.

Gilmore's business has impacted Plaintiff.  For example, during tax filing season, Gilmore's employees are present at the property between 9 a.m. and 11 p.m.  *Id.* ¶ 21.  Similarly, Gilmore's clients "take most street parking spaces."  *Id.* ¶ 36.  Plaintiff also alleges that the Kearny Defendants have been improperly calculating Plaintiff's taxes by using an "unproven and unrecognized method . . . in order to save assessment fees for Kearny."  *Id.* ¶ 31.

Based on these allegations, Plaintiff asserts five causes of action:

1. Civil rights violations, 42 U.S.C. § 1983 – 14th Amendment.  *Id.* ¶¶ 40-67.
2. 42 U.S.C. § 1983 Supervisor Liability.  *Id.* ¶¶ 68-77.

---

[1] Gilmore was served on June 13, 2023, but has not answered.  Nevertheless, for the reasons below, this matter will also be dismissed against her.
[2] The Court notes Plaintiff's oral argument requests, D.E.s, 16, 18, but deems it unnecessary to resolve the pending motions. Fed. R. Civ. P. 78; L.Civ.R.78(b).
[3] Except where otherwise noted, this section derives from the Complaint's well-pled factual allegations, presumed to be true for the purposes of these motions.
[4] Plaintiff does not identify the ordinance.

    3.  Violation of New Jersey Civil Rights Act.  *Id.*  ¶¶ 78-84.
    4.  Fraud against Gilmore.  *Id.* ¶¶ 85-92.
    5.  Tax evasion against Gilmore.  *Id.* ¶¶ 93-95.

Counts 1 through 3 can be subcategorized as follows: (1) state and federal civil rights claims against the State Defendants stemming from Gilmore's Veterans' Exemption; (2) state and federal civil rights claims against the Kearny Defendants stemming from Gilmore's Veterans' Exemption and Kearny's tax assessment on Plaintiff's property; and (3) state and federal civil rights claims against the Kearny Defendants for selective zoning enforcement, *i.e.*, permitting Gilmore to run a business from her residence.  Counts 4 and 5 stand alone: they are individual tax and fraud claims against Gilmore individually.

Based on these allegations, Plaintiff seeks damages and various forms of injunctive and declaratory relief.  *Id.* at 15-16.  Plaintiff essentially seeks to have Gilmore's Veterans' Exemption revoked and Plaintiff's own taxes refunded.  *Id.*

    **B.**    **Plaintiff Loses Similar Challenges in State Tax Court**

Plaintiff has filed at least two Tax Court actions, one of which encompassed allegations similar to those here.  The first was a 2021 tax appeal seeking to decrease Kearny's assessment of Plaintiff's home.  *See* D.E. 12-1, New Jersey Tax Court Docket No. 11024-2021 (the "Tax Appeal").  Plaintiff and Kearny settled the Tax Appeal, agreeing to a refund and the right to challenge future assessments.  *Id.*

Plaintiff also filed a separate Tax Court action related to Gilmore's Veterans' Exemption. *See* D.E. 9-2, Kearny Mot. Ex. 1, *Yu v. Kearny*, New Jersey Tax Court Docket No. 11046-2021 (the "Gilmore Tax Case").  There, Plaintiff argued that Gilmore's Veterans' Exemption should be revoked because Gilmore's property was "not used solely for residential purpose[s]," but also "to conduct [Gilmore's tax business] for 45 years."  *Id.* at 14; D.E. 9-2 at 14.  Plaintiff argued that

3

Gilmore also used the business to justify deducting "all expenses caused to maintain the property," including utilities, "security surveillance," mowing lawn, pool and household cleaning service, property improvement costs, etc." *Id.* The Tax Court joined Gilmore as a party. *Id.* at 12.

On February 24, 2022, after a hearing, the Tax Court found that: (1) Gilmore "indisputably . . . satisfies the qualifying factors for a surviving spouse's entitlement to the [Veterans' Exemption] pursuant to N.J.S.A. § 54:4-30,[5] *et seq.*"; (2) N.J.S.A. § 54:4-30 does not prohibit the use of a residence as a home office; and (3) the evidence did not "delineate a measurable portion of the residential property being used exclusively as a business." *Id.* at 18, Kearny Mot. Ex. 3. Based on these findings, the Tax Court dismissed Plaintiff's complaint with prejudice. *Id.*

### C. The Pending Motions

The Kearny and State Defendants now move to dismiss. The Kearny Defendants argue that (1) the *Rooker-Feldman* doctrine divests this Court of jurisdiction to consider Plaintiff's claims because the New Jersey Tax Court already addressed them; and (2) the Complaint fails to state a claim upon which relief can be granted. The State Defendants argue that: (1) Plaintiff's claims are vague and not cognizable; (2) the TIA bars Plaintiff's claims; and (3) principles of comity also bar Plaintiff's claims.

Plaintiff opposes both motions. D.E. 12 ("Pl. Kearny Opp'n"); D.E. 20 ("Pl. State Opp'n").[6] The Kearny and State Defendants each reply. D.E. 15 ("Kearny Reply"); D.E. 22 ("State Reply").

---

[5] This appears to reference N.J.S.A. § 54:4-3.30.
[6] Plaintiff submitted duplicate oppositions to the State Defendants' motion. *See* D.E. 19, 20.

## II.     LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pled facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (cleaned up). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

To survive a Rule 12(b)(6) challenge, the plaintiff's claims must be facially plausible, meaning that the well-pled facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft*, 556 U.S. at 679. Finally, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

Disposition of Rule 12(b)(1) motions is more complicated. "A district court has to first determine . . . whether a Rule 12(b)(1) motion presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Constitution Party of Penn. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (citing *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012)). "A facial attack . . . is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter

jurisdiction of the court because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present." *Id.* at 358. But "[a] factual attack is an argument that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *Id.* In a factual attack, "the District Court may look beyond the pleadings to ascertain the facts." *Id.* "In sum, a facial attack 'contests the sufficiency of the pleadings,'" *id.* (quoting *In re Schering Plough Corp.*, 678 F.3d at 243), "'whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" *Id.* (quoting *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008)).

Here, Defendants do not dispute Plaintiff's central factual allegations: that Gilmore was granted the Veterans' Exemption and permitted to run a business at her residential property. Accordingly, this is a facial attack. And on a facial attack, this Court can consider whether the Tax Case and Tax Appeal, the existence and outcome of which Plaintiff does not dispute, divest this Court of jurisdiction. *See John G. v. Northeastern Educ. Intermediate Unit 19*, 490 F. Supp. 2d 565, 575 (M.D. Pa. 2007) ("[T]he court may consider only the [complaint's allegations and exhibits], matters of public record such as court records, letter decisions of government agencies and published reports of administrative bodies, and 'indisputably authentic' documents which the plaintiff has identified as a basis of his claims and which the defendant has attached as exhibits to his motion to dismiss."); *Silverberg v. City of Phila.*, No. 19-2691, 2020 U.S. Dist. LEXIS 4736, at *10-11 (E.D. Pa. Jan. 8, 2020) (considering docket printout for state case, lower court opinion, and appellate court opinion on facial attack).

**III.   ANALYSIS**

Because "[s]ubject matter jurisdiction is a threshold requirement for asserting a claim in federal court," the Court addresses Defendants' jurisdictional arguments first. *Silverberg*, 2020 U.S. Dist. LEXIS 4736, at *12-13.

    **A.   This Court Lacks Jurisdiction Over Plaintiff's Tax-Related Claims based on the Tax Injunction Act ("TIA"), Comity Principles, and the *Rooker-Feldman* Doctrine**

        *1.   The TIA and principles of comity bar Plaintiff's tax-related claims because "plain, speedy, and efficient" state court procedures are available*

The State Defendants argue that the TIA bars taxpayers from challenging the administration of a state tax in federal court. State Mot. at 6. The Kearny Defendants join this argument. Kearny Reply at 4. The Court agrees that the TIA precludes claims here related to the Veterans Exemption pertaining to Gilmore's home, Kearny's tax assessment of Plaintiff's home, or any other tax issue.

The TIA provides that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. This "embodie[s] Congress' decision to transfer jurisdiction over a class of substantive federal claims from the federal district courts to the state courts, as long as state-court procedures [are] 'plain, speedy and efficient' and final review of the substantive federal claim could be obtained in [the Supreme Court]." *Rosewell v. La Salle Nat'l Bank*, 450 U.S. 503, 515 n.19 (1981). The TIA is a jurisdictional bar to certain cases involving state taxes. *See In re Hechinger Inv. Co. of Del., Inc.*, 335 F.3d 243, 247 n.1 (3d Cir. 2003).

Similarly, "taxpayers are barred by the principle of comity from asserting Section 1983 actions against the validity of state tax systems in federal courts" so long as "plain, adequate, and

7

complete" remedies are available in state court.[7] *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 116 (1981). "Taken together, the [TIA] and the Supreme Court's decision in *McNary* make it clear that a federal court cannot entertain a suit posing either an equitable or a legal challenge to state or local taxes . . . if a sufficient remedy . . . is available in state court." *Kerns v. Dukes*, 153 F.3d 96, 101 (3d Cir. 1998). The "critical criterion" as to the adequacy of the remedy available to taxpayers is "not the relief which they can obtain" in state court proceedings, but "whether [the state court] provides a forum for presentation of their claims." *Hardwick v. Cuomo*, 891 F.2d 1097, 1106 (3d Cir. 1989).

Here, there is clearly a "plain, speedy, and efficient" state court procedure available to Plaintiff. A taxpayer may challenge an added assessment by appealing to the County Board of Taxation on or before December 1st of the year of the assessment. N.J.S.A. § 54:4-63.11. The County Board must hear the appeal and render judgment within one month after the last day for filing such appeals. *Id.* If the taxpayer is still dissatisfied, he or she may appeal the Board's decision to the Tax Court within forty-five days of the Board judgment. *Id.* In the Tax Court, the taxpayer is entitled to a *de novo* hearing before a tax court judge with expertise in the field of real property valuation. N.J.S.A. § 2B:13-3(b); *see Union City Associates v. City of Union City*, 115 N.J. 17, 23 (1989) (stating that Tax Court provides *de novo* review). A taxpayer may then proceed to the Appellate Division and beyond. N.J.S.A. § 2B:3-4.

This satisfies the "'minimal procedural criteria' . . . to preclude section 1983 suits in either federal or state courts." *GMC v. City of Linden*, 143 N.J. 336, 350 (1996) (quoting *Rosewell*, 450

---

[7] Courts analyze NJCRA claims under the same standards as section 1983 claims. *Est. of Gandy v. City of Millville*, 2023 U.S. Dist. LEXIS 172088, *17-18 (D.N.J. Sept. 25, 2023).

U.S. at 512). Indeed, Plaintiff utilized the procedure for both her own tax appeal and her challenge to Gilmore's Veterans' Exemption.

In opposition, Plaintiff argues that "the TIA should not apply . . . as Plaintiff is not challenging the assessment, levy, or collection of a state tax. Instead, she is seeking declaratory and injunctive relief against the State Defendants' alleged failure to enforce tax laws. . . . [T]his instant civil action is about civil rights violations of Plaintiff, not tax assessment." Pl. State Opp'n at 4, ¶ 6.

However, Plaintiff's attempt to reframe her challenge to the administration of taxes—both hers and Gilmore's—as a civil rights claim is unavailing. As noted above, the availability of a "plain, speedy, and efficient" Tax Court proceeding precludes those claims. Moreover, constitutional objections are, and have been, available in Tax Court. *See GMC*, 143 N.J. at 349 ("Even before the . . . [expansion of] Tax Court jurisdiction to hear any tax-related matters over which the Superior Court would have jurisdiction, the Tax Court could correct an unconstitutional assessment."); *see also Russo v. Twp. of Plumsted*, No. 13-5082, 2014 U.S. Dist. LEXIS 94318, at *23-26 (D.N.J. July 11, 2014) (finding that TIA bars claim that "indirectly challenges the validity of the procedures implemented and final determinations made by [defendant township's] Tax Assessor with respect to whether a farmland designation on [p]laintiff's [p]roperty was justified").

Accordingly, this Court lacks jurisdiction to consider Plaintiff's tax challenges. Thus, the State Defendants' motion to dismiss and the portion of the Kearny Defendants' motion addressing taxation will be **GRANTED** and any tax-related claims will be **DISMISSED with prejudice** for lack of jurisdiction. Because the Complaint's allegations against Gilmore relate entirely to

taxation, *see* Compl. ¶¶ 85-95, the Court will also *sua sponte* **DISMISS with prejudice** Counts Four and Five against Gilmore.[8]

> 2. *The Rooker-Feldman doctrine also bars Plaintiff's tax-related claims because she already litigated them in Tax Court*

The Kearny Defendants argue that the *Rooker-Feldman* doctrine bars this Court from considering Plaintiff's claims because it would have to, in effect, sit as an appellate court reviewing or modifying the state Tax Court's judgment. Kearny Mot. at 2.

"The *Rooker-Feldman* doctrine [precludes] lower federal court jurisdiction over claims that were actually litigated or inextricably intertwined with adjudication by a state's courts." *Parkview Assocs. Pshp. v. City of Leb.*, 225 F.3d 321, 325 (3d Cir. 2000). A federal action is inextricably intertwined with a state adjudication, and thus barred in federal court under Feldman, "where federal relief can only be predicated upon a conviction that the state court was wrong." *Id.* "[T]here are four requirements . . . for the *Rooker-Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (quoting *Exxon Mobil*, 544 U.S. at 284).

Here, the Court could not award Plaintiff what she seeks—as far as this Court can discern, to strip Gilmore or all tax exemptions and close her business—without overruling the Tax Court.

---

[8] Federal courts have a "continuing obligation to assess [their] subject matter jurisdiction," and thus can "dismiss a suit sua sponte for lack of subject matter jurisdiction at any stage in the proceeding." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010). Notably, there is no basis to find that Plaintiff has standing to challenge Gilmore (or anyone's) failure to pay federal taxes. *Caldwell v. Singerman*, 2023 U.S. Dist. LEXIS 12189, *7 (N.D. OH Jan. 23, 2023).

10

The *Rooker-Feldman* doctrine has previously barred actions meant to "get around" a state court tax judgment. *See Silverberg*, 2020 U.S. Dist. LEXIS 4736, at *15 (holding that *Rooker-Feldman* applies to plaintiff who effectively sought review of default judgment against him related to unpaid taxes); *Marquardt v. Supervisor of Dep't of Assessments & Taxation of Calvert Cnty.*, 195 F. Supp. 2d 706, 710 (D. Md. 2002) (dismissing claim that tax reassessment affirmed by state appellate court violated United States Constitution's Contracts Clause); *see also Kepoint Preservation Trust Org. ex rel. Brown v. Fisher*, 173 F. App'x 191, 194 (3d Cir. 2006) (affirming dismissal of claim that real estate transfer taxes violated Contracts Clause and Pennsylvania law where earlier Pennsylvania court rulings adverse to plaintiff were "inextricably intertwined" with plaintiff's claims in federal court).

Plaintiff argues, in substance, that "the *Rooker-Feldman* doctrine is not applicable in this case as the federal claim was not actually litigated in the state court prior to the federal action, nor is the federal claim inextricably intertwined with the state court adjudication." Opp'n at 3.[9] But this argument is unavailing—the tax issues raised here were clearly raised in Tax Court.

In the Tax Case, Plaintiff argued that Gilmore continues to enjoy the Veterans' Exemption despite not using her property solely as a residence. *See* D.E. 9-2 at 6. In the Tax Appeal, Plaintiff challenged Kearny's assessment methodology. *See* D.E. 12-1.

And here, arguments reframed as civil rights claims simply reanimate the same tax issues. For example, Count One centers on Gilmore's use of her property-tax-exempt home to run a business. Compl. ¶¶ 45-47. Count Two, framed as a supervisory liability claim, alleges that "[t]he

---

[9] Plaintiff also differentiates this action from the Tax Court matters by characterizing it as "a civil action . . . about civil rights violations of Plaintiff." Pl. State Opp'n at 4. The Tax Court, Plaintiff argues, "doesn't have authority to adjudicate civil rights violations." *Id.* These are essentially the same arguments made, and rejected above, in response to the TIA issue.

failure of Kearny to train, supervise and correct [its assessor's] methodology of assessing property value in Kearny amounted to gross negligence. *Id.* ¶ 74.[10]  And Counts Four and Five, asserted against Gilmore only, exclusively concern Gilmore's taxes. *Id.* ¶¶ 85-95.

Plaintiff's opposition papers confirm the Court's interpretation.  For example, just as she did in Tax Court, Plaintiff invites the Court to "consult . . . the New Jersey Supreme Court's decision" in *Gourmet Dining, LLC v. Union Township*[11] to clarify that Gilmore's property "should not be tax exempted if it is used for profit purposes."  *Compare* Pl. State Opp'n at 13 with D.E. 9-2 at 6, ¶ 6.  Thus, Plaintiff's tax-related claims here are clearly not only "inextricably intertwined" with her Tax Court claims, but are one and the same.  Accordingly, this Court is precluded from considering them, which provides a separate basis to **DISMISS with prejudice** any tax-related claims.

### B. Plaintiff Fails to State a Claim for Selective Zoning Enforcement

As discussed above, the tax-related claims, which comprise much of the Complaint, must be dismissed without prejudice for lack of jurisdiction.  And normally, upon finding that it lacks jurisdiction, a court would proceed no further.  *See Battles v. Washington Metro. Area Transit Auth.*, 272 F. Supp. 3d 5, 10-11 (D.D.C. 2017) ("Faced with motions to dismiss under Rule 12(b)(1) and Rule 12(b)(6), a court should first consider the Rule 12(b)(1) motion because [o]nce a court determines that it lacks subject matter jurisdiction, it can proceed no further.")

However, though the parties barely address the Complaint's allegation that Kearny "failed to enforce [its] zoning ordinance," it remains part of the Complaint's civil rights claims (Counts One through Three).  *See* Compl. ¶ 25; *see also id.* ¶¶ 53, 56; Pl. State Opp'n at 13 ("Defendants

---

[10] Count Three, which alleges a New Jersey Civil Rights Act violation, relies "on the aforesaid conduct." *Id.* ¶ 83.
[11] 243 N.J. 1, 4 (2020).

have continued [their] violations of Plaintiff's civil rights by selectively enforcing zoning ordinance."). This allegation was not part of either the Tax Appeal or Gilmore Tax Case, and therefore is not precluded under the TIA, comity doctrine, or *Rooker-Feldman* doctrine. That said, though the Court must construe the pro se Complaint liberally, it cannot "add facts that [Plaintiff] does not supply." *Doe v. Law Sch. Admission Council, Inc.*, 791 F. App'x 316, 321 (3d Cir. 2019). Accordingly, the zoning enforcement claim will be **DISMISSED without prejudice**.

"[T]he reality is that local town officials engage in a vast range of highly discretionary decisions that affect the property rights and everyday activities of town citizens." *Gray v. Town of Easton*, 115 F. Supp. 3d 312, 317 (D. Conn. 2015). Moreover, "[s]mall town governments often make decisions with less than perfect information and ordinarily without the benefit of sophisticated enforcement resources." *Id.* Accordingly, "not every wrong or ill-informed decision by a local government official is grounds for a federal constitutional cause of action." *Id.* Thus, "[c]ourts . . . have repeatedly cautioned about the danger of ordinary disputes between a citizen and a municipality — whether it be about land use, licenses, inspections, or some other regulatory or investigative function of local governments — being transformed into federal lawsuits by an incorrect, overexpansive theory of class-of-one liability." *DeFalco v. Dechance*, 949 F. Supp. 2d 422, 434 (E.D.N.Y. 2013) (citation omitted).

In limited circumstances, the Equal Protection Clause prohibits the "selective enforcement" of a law based on an unjustifiable standard. *Thomas v. Independence Twp.*, 463 F.3d 285, 297 (3d Cir. 2006); *see also United States v. Batchelder*, 442 U.S. 114, 125 n.9 (1979). To establish a selective-enforcement claim, a plaintiff must demonstrate: (1) treatment different from other similarly situated individuals, and (2) that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor, or to prevent the

13

exercise of a fundamental right. *PG Publ'g Co. v. Aichele*, 705 F.3d 91, 115 (3d Cir. 2013) (citing *Dique v. N.J. State Police*, 603 F.3d 181, 184 n.5 (3d Cir. 2010)). To maintain an equal protection claim, a plaintiff must show not only that the administration of a law has resulted in unequal application to those who are entitled to be treated alike, but also that there is an element of intentional or purposeful discrimination present. *Id.*; *see also Jewish Home of E. Pa. v. Ctrs. for Medicare and Medicaid Servs.*, 693 F.3d 359, 363 (3d Cir. 2012) ("[T]o maintain an equal protection claim of this sort, [plaintiff] must provide evidence of discriminatory purpose, not mere unequal treatment or adverse effect.").

Here, the Court strains to find any plausible constitutional infirmity. Plaintiff does not, for example, name the specific Kearny ordinance that Kearny is enforcing selectively, examples of that selective enforcement, or how Plaintiff is similarly situated to Gilmore (or anyone else). Even if she had identified one,[12] however, Plaintiff does not allege that she is entitled to, and has been denied from receiving, the benefit of any ordinances. *See Jewish Home*, 693 F.3d at 363 (finding no "[s]elective discriminatory enforcement" where facts demonstrated only that some facilities were penalized less often than plaintiff). She alleges just one specific example of selective enforcement against *her*: that Kearny threatened her "with [a] $500 . . . fine if Plaintiff didn't

---

[12] Plaintiff appears to reference Kearny Ordinance § 38-6.2, which governs "Accessory Uses in Residential Zones." The street where Plaintiff and Gilmore's properties are located is designated R-1, or single-family zoning. *See Kearny Zoning Map*, available at http://viewer.myidv.com/Map/71332c322babacd3/Kearny-myiDV---Public. That ordinance lists certain requirements for businesses operated out of single-family houses. The requirements include, as relevant to Plaintiff's complaints, that such a business "shall not use more than 1/3 of the total floor area of the dwelling unit or 750 square feet, whichever is less," shall not permit "more than one nonresident employee," shall not "generate traffic, parking, . . . or any other hazard or nuisance to any greater or more frequent extent than what normally occurs in the applicable zoning district," shall not serve more than three customers at a time, and must provide a certain amount of off-street parking depending on the amount of the residence used as part of the business. It also explicitly excludes certain uses—like nursery schools, gun shops, and tattoo parlors—but notably does not exclude tax preparation offices.

14

remove a landscaping tree in front of her property" despite other properties and businesses "hav[ing] the same type of trees on their properties."

However, "[l]and-use decisions are matters of local concern and such disputes should not be transformed into substantive due process claims based only on allegations that government officials acted with improper motives." *Hankin Family P'ship v. Upper Merion Twp.*, No. 01-1622, 2012 U.S. Dist. LEXIS 1471, at *58-59 (E.D. Pa. Jan. 5, 2012). Therefore, federal courts apply the "shocks the conscience" test to avoid converting a court into super zoning boards of appeals. *Giuliani v. Springfield Twp.*, 726 F. App'x 118, 123 (3d Cir. 2018).

Here, Plaintiff does not explain why any zoning decisions made by Kearny—against her *or* Gilmore have utilized an "unjustifiable standard," or identify any conduct or motive that "shocks the conscience." Indeed, Plaintiff does not even allege that Kearny ever carried out its threat, or that she was forced to remove the tree. Even if she had, however, this would not rise to a constitutional concern. Because the Court addresses Plaintiff's first pleading, and because an amended complaint could plausibly allege additional facts, the zoning-related claims will be **DISMISSED without prejudice** and with an opportunity to amend.[13]

## IV.  CONCLUSION

For the reasons above, the Kearny Defendants' motion to dismiss, D.E. 9, and the State Defendants' motion to dismiss, D.E. 11, will be **GRANTED** as follows.

- Because Plaintiff fails to state a civil rights claim for selective enforcement of zoning ordinances, the branch of the Kearny Defendants' motion seeking to dismiss

---

[13] Plaintiff is cautioned, however, that the filing of any future frivolous papers in this action or the opening of any new frivolous lawsuits, including any unreasonable attempt to relitigate claims dismissed with prejudice, may be met with monetary sanctions, including attorneys' fees and costs. *Peter v. New Jersey*, No. 23-2477, 2024 U.S. Dist. LEXIS 14076, at *13 (D.N.J. Jan. 26, 2024); *Nufrio v. Quintavella*, 2012 U.S. Dist. LEXIS 16791, at *4 (D.N.J. Feb. 10, 2012) (sanctioning *pro se* plaintiff for repeated frivolous filings and ordering payment of $1,000 as a deterrent for future violations).

- those claims will be **GRANTED** and the Court will **DISMISS** those claims against the Kearny Defendants **without prejudice** and with leave to amend within 30 days of the accompanying Order.
- Because the TIA, comity principles, and *Rooker-Feldman* doctrine preclude this Court's consideration of state tax issues, this Court will **GRANT** the State Defendants' motion and the branch of the Kearny Defendants' motion addressing tax claims and **DISMISS** any tax-related claims **with prejudice**.
- The Court will also *sua sponte* **DISMISS with prejudice** the claims against Gilmore.

An appropriate Order accompanies this Opinion.

March 20, 2024

Evelyn Padin, U.S.D.J.

16